Bullivant|Houser|Bailey PC
3883 Howard Hughes Parkway, Suite 550
Las Vegas, Nevada 89169
Telephone: (702) 6569-3600
Facsimile: (702) 650-2995

# EXHIBIT A

**Settlement Agreement**

**[see attached]**

MTHM DRAFT

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into on December __, 2007, by and between Binford Medical Developers LLC (the "Borrower"), Kenneth E. Schmidt (the "Guarantor"), and Compass Financial Partners LLC, Compass USA SPE LLC and Compass Partners LLC (collectively, "Compass") (collectively with the Guarantor and Borrower, the "Parties").

## RECITALS

This Agreement is based upon and made with respect to the following recitals of fact to which the Parties agree:

A. On or about August 31, 2005 (the "Origination Date"), USA Commercial Mortgage Company ("USACM") originated a commercial loan on behalf of approximately 53 direct lenders (together with direct lenders who advanced funds to the Borrower after the Origination Date, the "Direct Lenders") to the Borrower in the principal amount of $4,250,000.00 (the "Binford Loan");

B. The Binford Loan was intended to finance the construction of a medical office building to be known as the "Binford Medical Complex" located at 65th Street and Binford Boulevard in Indianapolis, Indiana (the "Property");

C. The Borrowers' obligations under the Binford Loan were personally guaranteed by the Guarantor;

D. The Binford Loan was evidenced by a Construction Loan Agreement, dated August 31, 2005, between the Borrower and the Direct Lenders;

E. On or about August 31, 2005, the Borrower executed a Promissory Note Secured by Mortgage, dated August 31, 2005 (as amended, the "Promissory Note"), in favor of the Direct Lenders in the amount of $4,250,000.00;

F. On or about August 31, 2005, as collateral for the Promissory Note, the Borrower executed a Mortgage, Security Agreement and Assignment of Rents, dated August 31, 2005, granting the Direct Lenders a first priority mortgage lien upon and security interest in the Property;

G. Additional funds were loaned to the Borrower by Direct Lenders pursuant to six Amendments to Loan Documents, such that the principal of the Binford Loan was

increased to $7,450,000.00, and the total number of Direct Lenders in the Binford Loan was increased to 92;

H. Pursuant to the Binford Loan documents, on or after August 31, 2005, amounts were forwarded by the Direct Lenders to a construction control account maintained by Fidelity National Title Group ("Fidelity"), the current balance of which is approximately $330,000.00 (the "Fidelity Escrow Amount");

I. USACM acted as servicer of the Binford Loan on behalf of the Direct Lenders from the Origination Date through February 16, 2007, pursuant to various loan servicing agreements by and between the Direct Lenders, individually, and USACM (the "LSAs");

J. On April 13, 2006, USACM, USA Capital First Trust Deed Fund, LLC ("FTDF"), and three other affiliates of USACM (collectively, the "Debtors") commenced chapter 11 cases in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), styled *In re USA Commercial Mortgage Company, et al.*, which were jointly administered under Chapter 11 Case No. BK-S-06-10725 (LBR);

K. On November 7, 2006, the Borrower commenced an adversary proceeding in the Debtors' chapter 11 cases, styled *Binford Medical Developers, LLC v. USA Commercial Mortgage Company and Fidelity National Title Group*, Adversary No. 06-01212-LBR (the "Adversary Proceeding"), in which the Borrower alleged breach of contract, breach of the covenant of good faith and fair dealing, intentional misrepresentations, and requested declaratory and injunctive relief against USACM and Fidelity;

L. On November 30, 2006, USACM filed a Counterclaim for Declaratory Relief in the Adversary Proceeding;

M. Effective February 16, 2007, Compass acquired substantially all of the assets of USACM and FTDF, including, among other things, FTDF's participation as a Direct Lender in the Binford Loan in the principal amount of $1,285,000.00 and USACM's rights under each LSA, all accrued default rate interest, servicing fees, late charges, success fees and other fees and sums due the servicer under the LSAs, pursuant to an Asset Purchase Agreement, dated as of December 7, 2006 (the "Sale"), which was

approved by the Bankruptcy Court by Order entered January 8, 2007, confirming the Debtors' chapter 11 plan of reorganization (the "Plan");

N. The Borrower was served with notice of the proposed Sale, and did not file an objection thereto;

O. Compass acquired the Debtors' assets, including the assets related to the Binford Loan, free and clear of all liens, claims, encumbrances and other interests pursuant to the Plan and 11 U.S.C. §363(f);

P. On March 26, 2007, in accordance with Section IV(D)(1) of the Plan, Compass filed a Notice of Election to Prosecute and Defend Pending Litigation, Pursuant to Debtors' Confirmation Chapter 11 Plan of Reorganization, pursuant to which Compass elected to prosecute and defend USACM's rights in the Adversary Proceeding;

Q. On or about April 25, 2007, Smith Development and Construction Company, Inc., an Indiana corporation, the general contractor hired by the Borrower to construct the Binford Medical Complex on the Property (the "Contractor"), filed a Complaint For Declaratory Judgment and Other Relief in the Marion Circuit Court in Indiana (the "Indiana State Court"), naming the Borrower, Compass, and Fidelity as Defendants, and seeking, among other things, entry of an order directing that the Fidelity Escrow Amount be paid directly to the Contractor (the "State Court Action");

R. On August 16, 2007, the Indiana State Court entered an Order directing Fidelity to deposit the Fidelity Escrow Amount into the registry of the Indiana State Court, and dismissing Fidelity as a party to the State Court Action;

S. The Fidelity Escrow Amount was deposited into the registry of the Indiana State Court;

T. On or about [September 1], 2007, Compass filed a Cross-Claim against the Borrower in the State Court Action seeking foreclosure upon the Property in accordance with Indiana law and the Binford Loan documents (the "Foreclosure Action"); and

U. On November 6, 2007, the Parties, through their direct representatives and counsel, with the participation of Stuart Madsen, a Direct Lender, the then Loan Captain on the Binford Loan and member of the Board of the Binford LLC, engaged in a mediation at the direction of the Bankruptcy Court before the Hon. Mike K. Nakagawa,

at which an agreement in principle was reached and read into the record resolving all pending disputes among the Parties, subject to certain conditions, all as more fully set forth below.

## AGREEMENT

NOW, THEREFORE, in consideration of the terms set forth herein, the Parties, without admission of liability and in settlement of the disputes among them, hereby agree as follows:

1. Allowable Debt. As of November 6, 2007, the allowable debt due and owing by the Borrower to the Direct Lenders and Compass on the Binford Loan is $10,521,978.52, with respect to which the Borrower has no defense or right of offset or recoupment. Compass acknowledges that the Borrower's and the Guarantor's agreements in this Paragraph 1 are without prejudice to the ability of the Direct Lenders (or of Compass) to assert that the indebtedness due and owing by the Borrower under the Binford Loan is in an amount as of November 6, 2007 other than agreed to hereby, and the Direct Lenders reserve their rights with respect to the assertion of any defense that otherwise may be available to them under applicable law with respect to Compass's entitlement to default interest and late fees in connection with the Discounted Payoff, as defined below.

2. Fair Market Value of the Property. As of November 6, 2007, the as is fair market value of the Property is approximately $5.4 million, the liquidation value of the Property is approximately $4.1 million, and the value of the Property on a fully built-out, leased, and stabilized basis, assuming 12 months of marketing, is approximately $6.66 million.

3. Settlement Amount. The Borrower shall pay Compass (on behalf of the Direct Lenders) the sum of $5.4 million (the "Discounted Payoff") at a closing date to occur no earlier than the 11th day following the entry of an Order of the Bankruptcy Court approving this Agreement, and in any event no later than March 31, 2008 (the "Closing Date").

4. Dismissal of Indiana Claims and Release of the Fidelity Escrow Amount. Effective as of the Closing Date, the Borrower, the Guarantor, and the Contractor will dismiss with prejudice all claims against Compass and the Direct Lenders in the State

Court Action currently pending in Indiana. Effective as of the Closing Date, Compass and the Direct Lenders will consent to the release to the Contractor of the Fidelity Escrow Amount currently held in the registry of the Indiana State Court.

5. Mutual Release. Effective as of the Closing Date, the Borrower, the Guarantor, Compass, and the Direct Lenders will exchange mutual releases and the Borrower and Compass will file dismissals with prejudice in the Adversary Proceeding. Effective as of the Closing Date, Compass and the Direct Lenders will exonerate and release the Guarantor on his personal guaranty.

6. Unsecured Claim Against USACM Estate. The Borrower's unsecured claim against the USACM chapter 11 estate shall be allowed in the amount of $925,000.000, which represents the deficiency in fully funding the Binford Loan alleged by the Borrower.

7. Foreclosure. Nothing in this Agreement shall stay, constitute an agreement to standstill, or preclude or forbid Compass from continuing to pursue the Foreclosure Action to a judgment or decree of foreclosure; provided, however, that Compass shall not schedule or complete a foreclosure sale of the Property on a date on or prior to the Closing Date.

8. Conditions to Effectiveness. The effectiveness of this Agreement is subject to the satisfaction prior to the Closing Date of each of the following conditions precedent: (a) unconditional approval of the Discounted Payoff amount by the Direct Lenders; (b) entry of an Order of the Bankruptcy Court approving the Agreement; (c) approval by the USACM Liquidating Trust of an allowed unsecured claim of $925,000.00 in favor of the Borrower; (d) the Contractor's agreement to dismiss any claims against Compass and the Direct Lenders with prejudice. Upon satisfaction of all such conditions and

9. Warranties. As part of the consideration for the payment of the aforementioned sums, the Parties hereto have expressly WARRANTED and REPRESENTED and do hereby for themselves, their predecessors, successors, assignors, assignees, beneficiaries, trustees, parents, members, partners, affiliates, subsidiaries, shareholders, directors, officers, employees, agents, insurers, attorneys and legal representatives expressly WARRANT and REPRESENT to one another that:

(i) They are entering into this Agreement voluntarily;

(ii) They have fully informed themselves of the terms, contents, conditions and effects of this Agreement and have had the opportunity to consult legal counsel of their choice in connection with this Agreement;

(iii) They are fully authorized to enter into this Agreement;

(iv) In making this settlement, no promise or representation of any kind has been made to them, except as expressly stated in this Agreement, and they are not relying on any representation or statement not expressly stated in this Agreement; and

(v) They have relied solely and completely upon their own judgment in making this release and fully understand that this is a full, complete and final release as to each of the Parties.

10. Execution of Counterparts. This Agreement may be executed simultaneously in two or more counterparts, including via facsimile, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument.

11. Choice of Law/No Construction In Favor of Any Party. This Agreement shall be construed as a whole in accordance with its fair meaning and in accordance with the laws of Nevada. The terms of this Agreement have been negotiated by the Parties, and any ambiguity in the language of the Agreement shall not be construed in favor of or against any particular party.

12. Severability. If any provision of this Agreement is held to be invalid, void, or unenforceable, the balance of this Agreement's provisions shall remain in full force and effect and will in no way be affected, impaired, or invalidated. The unenforceable provision shall be replaced by an enforceable provision as similar as possible to the unenforceable provision.

13. Entire Agreement. This Agreement constitutes the entire agreement, written, oral and implied, between Binford Medical Developers LLC, Kenneth E. Schmidt, the Direct Lenders, Compass Financial Partners LLC, Compass USA SPE LLC and Compass Partners LLC, and this supersedes and replaces all prior negotiations, proposed agreements (written, oral, and implied) and it is expressly understood and

agreed that this Agreement may not be amended or modified in any respect, except by a writing duly executed by all the Parties hereto or their authorized representatives.

14. No Third Party Beneficiaries. Except as set forth specifically with respect to the Direct Lenders in Paragraph 1 hereof, nothing in this Agreement, express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any person other than the Parties hereto and their respective permitted successors and assigns.

Executed in multiple originals on this __ day of December, 2007.

COMPASS FINANCIAL PARTNERS, LLC

By:______________________________
Printed Name:________________________
Title:_____________________________

COMPASS USA SPE LLC

By:______________________________
Printed Name:________________________
Title:_____________________________

COMPASS PARTNERS, LLC

By:______________________________
Printed Name:________________________
Title:_____________________________

BINFORD MEDICAL DEVELOPERS LLC
By:______________________________
Printed Name:________________________
Title:_____________________________

KENNETH E. SCHMIDT, individually and as Guarantor
By:______________________________
Printed Name:________________________
Title:_____________________________